UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: RBC CAPITAL MARKETS CASH SWEEP LITIGATION | 24-cv-8226 (ALC)<br><br>OPINION & ORDER |

ANDREW L. CARTER, JR., United States District Judge:

Regis J. Moeller ("Moeller") and Karen Uzel ("Uzel") (jointly, "Plaintiffs") bring this action against Defendants Royal Bank of Canada ("Royal Bank") and RBC Capital Markets, LLC ("RBC CM") (collectively, "Defendants" or "RBC") alleging breach of fiduciary duty, breach of contract, breach of implied covenant of good faith and fair dealing, negligence, negligent misrepresentations and omissions, violation of the New York General Business Law §349, and unjust enrichment. Defendants now move for dismissal of Plaintiffs' Consolidated Amended Complaint ("CAC") pursuant to 9(b), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. After careful review, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### Factual Background

Defendant Royal Bank Canada ("Royal Bank") is the parent company of Royal Bank Capital Markets LLC ("RBC CM"). Consolidated Amended Complaint ("CAC") ¶ 13. RBC CM is a broker-dealer and a Registered Investment Advisor that offered brokerage and investment advisory services to its client base. *Id.* ¶ 12. Plaintiffs allege that Defendants swept otherwise uninvested customer cash into interest-bearing deposit accounts through Defendants' Insured

Deposit Program ("IDP"). *Id.* ¶¶ 2, 1. These accounts were in banks or other depository institutions selected by Defendants, including banks owned by Royal Bank and affiliated with RBC CM – such as City National Bank and RBC Bank (Georgia), N.A. (collectively, "RBC Affiliate Banks") – and several other banks unaffiliated with Defendants (together with the RBC Affiliate Banks, "Program Banks"). *Id.* ¶ 16. The Program Banks selected by Defendants then paid interest to the clients on the funds held in the IDP deposit accounts, which are FDIC insured up to $250,000. *Id.* ¶¶ 14, 19.

Plaintiffs allege that Defendants breached their contractual obligations to act in their customers' best interests by paying unreasonably low rates of interest throughout the operation of the IDP. Plaintiffs also allege that Defendants extracted unreasonable fees for themselves out of the interest accrued on customers' Deposit Accounts (fees as high as 6.08% (5.33% federal funds rate + 0.75%) vs. interest rates as low as 0.01%). *Id.* ¶¶ 70-72. In a similar vein, Plaintiffs allege that Defendants owed fiduciary duties to Plaintiffs, which they allegedly breached by not acting in the best interests of Plaintiffs. *Id.* ¶ 77.

Plaintiffs also allege that Defendants made misrepresentations by stating IDP's "Cash management and sweep options" "makes it easy" for all customers in the IDP "to enjoy" the "advantage[]" of earning "competitive interest rates." *Id.* ¶ 83. Plaintiffs allege that Defendants made another misrepresentation by stating, "[c]ash balances held in Retirement Accounts subject to ERISA or Section 4975 of the Code will bear a reasonable rate of interest as required under the prohibited transaction exemptions of ERISA and the Code that permit the investment of such Retirement Account assets in deposits of Affiliated Banks." *Id.* ¶ 84. Plaintiffs allege these statements were false or misleading because the interest rates in the IDP were not "reasonable" or "competitive." *Id.* ¶ 85. Finally, Plaintiffs allege the IDP Program Documents misleadingly

stated that "[t]he interest rates, if any, you receive on your funds in the Deposit Accounts may be higher or lower than the interest rates available on other deposit accounts offered by a Program Bank or on deposit accounts offered by other depository institutions in comparable accounts or on any money market funds[]" and "[y]ou may receive higher rates by investing directly in money market funds or cash alternatives outside of the Cash Sweep Program[.]" Plaintiffs allege that Defendants knew interest rates in the IDP were always significantly below market alternatives.

**Procedural History**

Plaintiffs filed their Complaint on October 29, 2024. ECF No. 1. Defendants filed a motion to dismiss on February 21, 2025. ECF No. 17. Plaintiffs filed their Opposition on March 24, 2025. ECF No. 21. On April 24, 2025, Defendants filed their Reply. ECF No. 24. On August 19, 2025, the Court denied Defendants' motion to dismiss as moot in light of consolidating *Uzel v. RBC Capital Markets,* LLC, No. 1:24-cv-08226 (ALC) and *Moeller v. Royal Bank of Canada, et ano.,* No. 1:25-cv-04512 (ALC).

On September 15, 2025, Plaintiffs filed a Consolidated Amended Class Action Complaint. ECF No. 32. On October 27, 2025, Defendants filed a motion to dismiss the Consolidated Amended Class Action Complaint. ECF No. 43. On November 10, 2025, Plaintiffs filed their Opposition. On November 21, 2025, Defendants filed their Reply.

STANDARD OF REVIEW

**Rule 12(b)(2)**

Rule 12(b)(2) mandates dismissal of an action against any defendant over whom a Court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A plaintiff opposing a Rule 12(b)(2) motion "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it

seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha,* 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted). A civil plaintiff must therefore plead sufficient facts establishing "a prima facie showing" that personal jurisdiction exists. *Grand River Enters. Six Nations, Ltd. V. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (citation omitted). This prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks and citation omitted). This averment must provide "factual specificity necessary to confer jurisdiction" as mere "conclusory statements" are insufficient. *Jazini by Jazini v. Nissan Motor Co*., 148 F.3d 181, 185 (2d Cir. 1998). What's more, a reviewing Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citation omitted).

A Court reviewing a 12(b)(2) motion "may consider documents beyond the pleadings in determining whether personal jurisdiction exists." *Greatship (Ind) Ltd. v. Marine Logistics Sols*. (Marsol) LLC, 2012 U.S. Dist. LEXIS 8231, at *5 (S.D.N.Y. Jan. 24, 2012) (citation omitted). Personal jurisdiction must also be established "with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

**Rule 12(b)(6)**

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

DISCUSSION

I. The Court does not have personal jurisdiction over RBC

Defendant Royal Bank alleges that Plaintiffs do not have personal jurisdiction over it. The Court analyzes this argument under New York law. "Aside from exceptional cases, a corporation is subject to general jurisdiction only where it is formally incorporated or maintains its principal place of business." *John Aloisio, as Ex'r of the Est. of Elizabeth Aloisio, Deceased v. Stiftung Aktion Knochenmarkspende Bayern*, No. 25 Civ. 7997 (KPF), 2026 WL 1745745, at *4 (S.D.N.Y. June 17, 2026) (citing *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014)). Here, Defendant Royal Bank is headquartered in Toronto, Canada, not in New York. CAC ¶ 11. The CAC states that Royal Bank conducts business throughout the United States. *Id*. As for the connection to New York, the CAC states, "Defendants had offices in and did sufficient business in, and had sufficient contacts with New York, and intentionally availed themselves of the laws and markets of New York through the promotion, sale, marketing, distribution, and operation of their products and services." *Id*. ¶ 7. The Court agrees with Defendants that this statement is conclusory.

A court may constitutionally assert general jurisdiction over a corporation where its "affiliations with the State are so continuous and systematic as to render [it] essentially at home

in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal citations and quotation marks omitted). Here, Plaintiffs argue, without any citation to facts in the CAC, that "Royal Bank's statement that the U.S. is 'our second home market' and operating the 9th largest U.S. investment bank in New York are consistent with its presence being 'so continuous and systematic as to render it [sic] essentially at home.'" Plaintiff's Opposition ("Pl. Opp") at 33. The CAC does not mention that the U.S. is the Royal Bank's "second home market" and even if it did, the CAC does not allege facts to show the connection to New York. Additionally, Plaintiffs' statement that Royal Bank "operat[es] the 9th largest U.S. investment bank in New York" is misleading. The 9th largest bank the CAC refers to is Defendant Royal Bank Capital Markets, which is a subsidiary of Royal Bank.

Royal Bank is the parent company of subsidiary Royal Bank Capital Markets. CAC ¶ 13. "Where, as here, the claim is that the foreign corporation is present in New York state because of the activities there of its subsidiary, the presence of the subsidiary alone does not establish the parent's presence in the state." *Jazini v. Nissan Motor Co*., 148 F.3d 181, 184 (2d Cir. 1998) (internal citations omitted). "For New York courts to have personal jurisdiction in that situation, the subsidiary must be either an agent or a mere department of the foreign parent. To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary does all the business which the parent corporation could do were it here by its own officials." *Id.* (internal quotations and citations omitted). Plaintiffs have not pleaded specific facts to show that Royal Bank had "complete domination" over Royal Bank CM. *See Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2dCir. 1997). If anything, the CAC, pleads the opposite, that Royal Bank CM "exercised complete managerial discretion and control over the IDP." ¶¶ 2, 17, 71. Numerous courts considering 12(b)(2) motions in cash sweep cases have held that

plaintiffs failed to sufficiently allege facts against foreign parent companies. *See* Defendants' Motion to Dismiss ("Deft. Mot.") at 24, n. 25. This Court similarly finds that Plaintiff's complaint fails to adequately establish personal jurisdictional over foreign Defendant Royal Bank.

Plaintiff also argues a theory of specific jurisdiction, that Royal Bank CM conducted business in New York as an agent of Royal Bank including transactions with "a substantial relationship" to Plaintiffs' claims. CPLR 302(a)(1) (New York's long-arm statute) confers personal jurisdiction when a defendant conducts business in New York either personally or through an agent, and such contacts give rise to the claims in the action. However, Plaintiff has not pled in its CAC any facts to support an agency relationship.

II. Claims Against RBC CM

The Parties are in agreement and the Court agrees that Minnesota state law applies to the claims that do not otherwise specify they are New York state law claims. *See* CAC ¶ 28.

A. Breach of Contract

Plaintiffs allege that they were parties to the IDP Program Documents with RBC CM. *Id*. ¶ 104. The IDP Program Documents set forth the contractual terms and conditions of the IDP. *Id.* Plaintiffs allege that RBC CM breached its contractual obligations by (i) extracting unreasonable, unjustified, and arbitrary fees from the interest accrued on the Deposit Accounts and (ii) failing to provide Plaintiffs and the Class with reasonable interest rates on their deposits in the IDP.

"In order to plead breach of contract under Minnesota law, the plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to

demand performance by the defendant, and (3) breach of the contract by defendant." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 911 (8th Cir. 2016) (quotations and internal citations omitted).

Plaintiffs contend that Defendant breached the contract by not paying a "reasonable rate of interest." Defendant counters that it never *promised* to pay a "reasonable rate of interest" and that the language Plaintiff relies on was not "littered throughout the parties' Agreements, but rather appears only one time in a disclosure describing a statutory requirement for retirement accounts." Defendants' Reply to their Motion to Dismiss ("Reply"), at 4. There is no requirement that a contractual obligation appear multiple times or that it must be littered throughout the agreement. Moreover, factual assertions regarding the location of the language and arguments regarding the import of that location cannot be resolved on a motion to dismiss.

B. Breach of Fiduciary Duty

Plaintiffs allege that Defendant RBC CM breached a fiduciary duty by using the IDP to enrich themselves at the expense of customers by paying customers unreasonably low interest rates and extracting unreasonable fees from interest accrued on customers' Deposit Accounts. "A breach of fiduciary duty claim consists of four elements: duty, breach, causation, and damages." *Hansen v. U. S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019). Defendants argue that they did not have a fiduciary duty to Plaintiffs.

Under Minnesota law, a "fiduciary relationship exists 'when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal.'" *Hope v. Klabal*, 457 F.3d 784, 791 (8th Cir. 2006) (quoting *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985)). Minnesota law recognizes two categories of fiduciary relationships: *per se* fiduciary relationships and *de facto* fiduciary relationships. *See Mehlman*, 2025 WL 2403252, at

*10. Plaintiffs allege a *de facto* fiduciary relationship in the form of an agency relationship. However, courts, including *Mehlman v. Ameriprise Financial, Inc*, have rejected the claim that an agency relationship is formed when defendants and plaintiffs have a traditional broker/client relationship, No. 24-3018, 2025 WL 2403252 (D. Minn. Aug. 19, 2025). Here, the putative class of Plaintiffs consists of brokerage clients. *See* CAC ¶ 88. Plaintiffs have not alleged any facts to show a special relationship with Defendants warranting a fiduciary duty. If anything, the Agreements state that RBC CM "does not have any duty to monitor [Plaintiffs'] Automatic Sweep Investment option for [their] Account[s] or make recommendations about, or changes to, the Automatic Sweep Investment program that might be beneficial to [them]." Renshaw Declaration, Ex. 5, at 25. Therefore, the Court finds that Plaintiffs were not owed a fiduciary duty, meaning that this claim must be dismissed.

C. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs alleged that, in the IDP Program Documents, there was an implied covenant of good faith and fair dealing and that Defendants acted in bad faith, denying Plaintiffs the full benefit of their bargain under the IDP Program. CAC ¶ 110. "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing ...." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) (citing *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984)). "[A] plaintiff alleging a claim for breach of the implied covenant of good faith and fair dealing 'need not first establish an express breach of contract claim—indeed, a claim for breach of an implied covenant of good faith and fair dealing implicitly assumes the parties did not expressly articulate the covenant allegedly breached.' " *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 670 (8th Cir.

2012) (quoting *In re Hennepin Cnty.*, 540 N.W.2d at 503). Minnesota courts look to see whether defendants have subjectively acted in bad faith. *See Futo*, 826 F Supp. 3d. at 1035.

Defendants contend that they did not breach any implied covenant because they expressly disclaimed that the IDP's rates could be lower than alternatives. Deft. Mot. at 20. While Plaintiffs are correct that some courts considering cash sweeps allegations have rejected these kinds of disclaimers, the cases Plaintiffs cite, such as *Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701 (S.D.N.Y. 2025), are based on New York state law. Plaintiffs' cases do not take into account Minnesota's requirement that a claim for a breach of an implied covenant include allegations of subjective bad faith. Minnesota courts define "bad faith" "as a party's refusal to fulfill some duty or contractual obligation based on an ulterior motive, not an honest mistake regarding one's rights or duties." *Sterling Capital Advisors, Inc. v. Herzog,* 575 N.W.2d 121, 125 (Minn.Ct.App.1998). Plaintiffs do not put forth any facts to suggest that Defendants were acting outside contractual provisions or had an ulterior motive other than maximizing business revenue interests. *See Churlik v. Gate City Bank*, No. 23-CV-0637 (WMW/LIB), 2024 WL 453606 (D. Minn. Feb. 6, 2024), appeal dismissed, No. 24-1495, 2024 WL 4109516 (8th Cir. Apr. 23, 2024) (finding that there was no bad faith because defendants were just maximizing profits). Additionally, Plaintiffs do not allege that Defendants' actions were dishonest or malicious. Therefore, the Court finds that Plaintiffs' claim for breach of an implied covenant of good faith and fair dealing is dismissed.

D. Negligence and Negligent Misrepresentations and Omissions

In Counts IV and V, Plaintiffs allege Defendants were negligent and made negligent misrepresentations and omissions. Specifically, Plaintiffs allege that Defendants failed to act with reasonable care by not providing fair and reasonable sweep interest rates on their cash

sweep balances in the IDP. Additionally, Plaintiffs allege that Defendants made material misrepresentations and omissions in the IDP Program Documents that Plaintiffs relied on. CAC ¶ ¶ 114, 120.

Under Minnesota law, negligence requires: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *DeLuna v. Mower Cty.,* 936 F.3d 711, 716 (8th Cir. 2019). "To succeed on a negligent misrepresentation claim, a plaintiff must establish (1) a duty of care owed by the defendant to the plaintiff; (2) the defendant supplies false information to the plaintiff; (3) justifiable reliance upon the information by the plaintiff; and (4) failure by the defendant to exercise reasonable care in communicating the information. " *Aulick v. Skybridge Ams., Inc*., 860 F.3d 613, 623 (8th Cir. 2017) (internal citations and quotations omitted).

Defendants argue that Plaintiffs claims for negligence and negligent misrepresentation are barred by Minnesota's independent duty rule because the Parties' obligations are found in the Agreements. "When a contract defines a relationship between two parties, a plaintiff is not entitled to recover tort damages save for exceptional cases in which a breach of contract constitutes or is accompanied by an independent tort." *Russo v. NCS Pearson, Inc*., 462 F. Supp. 2d 981, 994 (D. Minn. 2006) (internal quotations and citation omitted). Plaintiffs argue that the independent duty rule does not apply because there was an agency relationship between the Parties that went beyond what was expressly provided in the Agreements. This Court has already rejected that there was a more expansive agency relationship between the Parties. *See* Section B. Therefore, the Court finds that Plaintiff's claims for negligence and negligent misrepresentation fail as a matter of law.

E. New York General Business Law Sec. 349

Plaintiffs also make a claim under New York General Business Law Sec. 349 that Defendants unlawfully and unfairly benefitted and enriched themselves and misled and deceived customers in the IDP through, among other things: (a) paying unreasonably low interest rates to customers; (b) extracting unreasonable fees from interest paid to customers; (c) abusing the managerial discretion provided under the IDP; (d) breaching the fiduciary, contractual, and other duties arising under the IDP; and (e) making false and misleading statements and omissions relating to such interest rates and duties in the IDP Program Documents. CAC ¶ 124.

To state a claim under New York General Business Law Section 349 ("GBL § 349"), a plaintiff must allege that: (1) "the challenged act or practice was consumer-oriented"; (2) "it was misleading in a material way"; and (3) "the plaintiff suffered injury as a result of the deceptive act." *Bernstein v. JPMorgan Chase Bank, N.A.*, 775 F. Supp. 3d 701, 718 (S.D.N.Y. 2025). Defendants argue that Section 349 does not apply because it does not cover services ancillary to securities transactions, and that IDP is a venue for safekeeping cash between securities transactions. However, courts have rejected this argument, including *Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701, 719 (S.D.N.Y. 2025).

Plaintiffs have sufficiently alleged that they suffered an injury and that Defendants may have paid unreasonably low rates to consumers. Therefore, the GBL Section 349 claim survives Defendants' motion.

F. Unjust Enrichment

Finally, Plaintiffs assert a claim of unjust enrichment, stating that Defendants financially benefitted from the unlawful acts alleged herein by paying Plaintiffs and the Class unreasonably low and below-market interest payments under the IDP. CAC ¶ 128.

To state an unjust enrichment claim, Plaintiffs must allege Defendants "knowingly received or obtained something of value for which [they] in equity and good conscience should pay." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (citation modified). The Court finds that Plaintiffs have alleged enough facts at this stage to show that Defendants may have paid Plaintiffs an unreasonably low rate.

CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part and denied in part. The Parties should submit a joint status report by October 14, 2026, regarding the status of settlement.

SO ORDERED.

Dated: September 29, 2026

New York, New York

ANDREW L. CARTER, JR.

United States District Judge